IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| ROBERT JEWELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 13-2048-STA-dkv |
| | ) |
| SHELBY COUNTY GOVERNMENT, and | ) |
| WILLIAM P. OLDHAM, in his individual | ) |
| capacity, | ) |
| | ) |
| Defendants. | ) |

_____

**ORDER DENYING MOTION TO DISMISS AND MOTION TO STRIKE PORTIONS OF THE AMENDED COMPLAINT**
_____

On January 25, 2013, Robert Jewell ("Plaintiff") filed a complaint (D.E. # 1) against William P. Oldham ("Oldham") and Shelby County Government ("Shelby County") (collectively, "Defendants"), alleging retaliation in violation of his First Amendment rights. Shelby County filed a Motion to Dismiss (D.E. # 14) on April 4, 2013.

On June 17, Plaintiff filed a Motion to Amend the Complaint (D.E. # 21) to add a claim under the Americans with Disabilities Act against Shelby County Government. Plaintiff also filed a separate complaint against Shelby County Government on July 8, 2013 (Docket No.: 13-2054-STA-dkv).

On July 10, 2013, the Court granted Plaintiff's Motion to Amend the Complaint, ordered both lawsuits consolidated, and denied Shelby County's Motion to Dismiss as moot (D.E. # 24). Plaintiff filed his Amended Complaint (D.E. # 25) on July 11, 2013.

1

Presently before the Court is Shelby County's Renewed Motion to Dismiss and/or Renewed Motion to Strike Portions of the Amended Complaint (D.E. # 28), filed July 29, 2013. Plaintiff filed his Response (D.E. # 32) on August 6, 2013. Shelby County filed a Reply (D.E. # 33) on August 13, 2013. For the reasons set forth below, the Court **DENIES** Shelby County's Motion.

## BACKGROUND

For the purposes of ruling on a motion to dismiss under Rule 12(b)(6), the Court assumes that all factual allegations in the Amended Complaint are true and draws all reasonable conclusions in favor of the Plaintiff.

Plaintiff is employed as a deputy sheriff in Shelby County Sheriff's Office, a department of Shelby County. (Am. Compl. ¶ 3, D.E. # 25). Plaintiff was hired in 1997 and consistently received satisfactory to above satisfactory performance evaluations until 2011. (*Id.* ¶ 6, 8). In February 2010, the incumbent sheriff, Mark Luttrell ("Luttrell") announced he would seek election as the county mayor in the August general election. (*Id.* ¶ 9). After Luttrell's announcement, Oldham, the then-chief deputy of Shelby County Sheriff's Office, announced he would seek election as sheriff in the May primary. (*Id.* ¶ 10).

Many people in the Sheriff's Office knew of Plaintiff's support for the opposing candidate for sheriff. (*Id.* ¶ 11). Although the Tennessee Attorney General had issued an opinion in 2008 stating that a deputy sheriff must first resign before running for sheriff, Oldham did not resign nor did Shelby County require him to. (*Id.* ¶ 12, 13).

On April 23, 2010, while Plaintiff was on duty, a lieutenant in Plaintiff's unit, who was a supporter of Oldham, grabbed Plaintiff around the neck and threw him against the wall. (*Id.* ¶

2

14). He told Plaintiff that he "better vote Republican in the primary." (*Id.* ¶ 14). Oldham and Luttrell were both Republican candidates. (*Id.*). Plaintiff reported this incident to his immediate supervisor. (*Id.* ¶ 15). The Bureau of Professional Standards and Integrity ("BPSI"), a division of the Sheriff's department responsible for investigating complaints about deputies initiated an investigation into the incident. (*Id.*). The head of BPSI was also an Oldham supporter. (*Id.* ¶ 16).

On April 27, 2010, Plaintiff spoke with Sheriff Luttrell, another Oldham supporter, to ensure that he would not be retaliated against for reporting the incident. (*Id.* ¶ 17). On April 28, 2010, Sheriff Luttrell ordered that Plaintiff be relieved of duty for an indefinite period. (*Id.* ¶ 18).

Oldham and Sheriff Luttrell won their primary races for sheriff and mayor on May 5, 2010. (*Id.* ¶ 21). Oldham did not resign from his position as Chief Deputy. (*Id.* ¶ 22). On June 28, Plaintiff filed a Complaint of a Hatch Act Violation with the Office of Special Counsel ("OSC"), an independent agency of the United States government that is responsible for investigating and prosecuting complaints of prohibited political activity. (*Id.* ¶ 23). Oldham was notified that Plaintiff had filed this complaint (the "OSC Complaint"). (*Id.* ¶ 24).

In the fall of 2010, after Oldham and Luttrell took office, an assistant prosecutor entered a room where Plaintiff was meeting with a state prosecutor. (*Id.* ¶ 27). He looked at Plaintiff and then abruptly slammed the door. (*Id.*). The prosecutor told Plaintiff the assistant prosecutor's behavior was related to plaintiff's OSC Complaint against Oldham. (*Id.*).

In December 2010, another Oldham supporter informed Plaintiff that he would be transferred under the supporter's command and that a second Oldham supporter would be

transferred to the same unit to jointly supervise Plaintiff. (*Id.* ¶ 28). After the transfer, Plaintiff found an invitation to Oldham's fundraiser on his desk, requiring a minimum donation of $50.00 per person. (*Id.* ¶ 29). Plaintiff understood the invitation to mean that he should contribute to Oldham's fundraiser if he wanted to avoid being transferred. (*Id.* ¶ 30). He did not make a contribution. (*Id.*).

In early January 2011, Defendants assigned a second Oldham supporter to supervise Plaintiff. (*Id.* ¶ 32). Plaintiff's unit was the only narcotics unit with six patrol deputies to be supervised by two sergeants and a lieutenant. (*Id.*).

In June 2011, those supervisors gave Plaintiff low performance evaluations, indicating that Plaintiff frequently did not meet performance expectations and that he needed close supervision. (*Id.* ¶ 33). The evaluations covered a year that included almost six months during which Plaintiff was not supervised by the individuals who made the report. (*Id.*). Plaintiff reported to the Chief Deputy that he was being subjected to a hostile work environment. (*Id.* ¶ 34). Plaintiff was transferred to a different assignment and no action was taken against his supervisors. (*Id.*).

In October 2011, Plaintiff notified a federal prosecutor that he wanted to be given a different appointment than the one he was scheduled for, since the appointment would have included the supervisor who previously harassed him in June 2011. (*Id.* ¶ 35). The next day the Chief Deputy transferred Plaintiff without notice to a less prestigious job in the patrol division. (*Id.*). This change of assignment resulted in loss of fringe benefits such as a take-home car, cell phone, specialized training, and opportunities to earn overtime that were not available in the patrol division. (*Id.*).

On November 2, 2011, Plaintiff was relieved of duty and ordered to undergo counseling. (*Id.* ¶ 36). The order was later changed to require Plaintiff to submit to a mandatory psychological fitness for duty ("FFD") evaluation. (*Id.*). While relieved of duty, Plaintiff received the annual holiday pay check. (*Id.* ¶ 37). Two weeks later, on December 15, 2011, Shelby County deducted the holiday pay from Plaintiff's payroll check without notice, claiming he was not entitled to receive holiday pay while relieved of duty. (*Id.*).

The Chief Administrative Officer told Plaintiff that he was permitted to exercise his legal rights during the FFD. (*Id.* ¶ 40). Plaintiff did so by declining to answer some questions he believed to be impermissible. (*Id.* ¶ 41). Plaintiff successfully completed the FFD in December, but Defendants refused to return him to duty. (*Id.* ¶ 42). Instead, a BPSI investigation was launched to investigate Plaintiff's exercise of his legal rights during the FFD. (*Id.* ¶ 45). BPSI is under direct control of the Sheriff and BSPI investigations may only be ordered by the Sheriff, Chief Deputy, or an assistant chief. (*Id.* ¶ 46, 47). While Plaintiff was questioned at the BPSI offices regarding the matter, the investigator gave Plaintiff a "Garrity Notice," which is given prior to questioning when there is a possibility of criminal charges. (*Id.* ¶ 50).

While relieved of duty, Plaintiff was ineligible to receive the annual state supplement for law enforcement officers. (*Id.* ¶ 52). On February 27, 2012, Plaintiff was returned to duty as a deputy sheriff and Defendants suspended the BPSI investigation. (*Id.* ¶ 54-55). On December 29, 2012, after attempts at settlement, Defendants' attorney told Plaintiff that if Plaintiff did not accept the settlement terms, the BPSI investigation would likely be revived and there was a high risk that Plaintiff's employment would be terminated. (*Id.* ¶ 57).

**STANDARD OF REVIEW**

**Motion to Dismiss**

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted."[1] When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the complaint as true and construe all of the allegations in the light most favorable to the non-moving party.[2] However, the Court will not accept legal conclusions or unwarranted factual inferences as true.[3] "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim."[4] Ordinarily, a reviewing court may not consider matters outside the pleadings on a motion to dismiss under Rule 12(b)(6).[5] However, "a copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."[6]

Under Federal Rule of Civil Procedure Rule 8(a)(2), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[7] Although this standard does not require "detailed factual allegations," it does require more than "labels and

---

[1] Fed. R. Civ. P. 12(b)(6).

[2] *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992).

[3] *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

[4] *Wittsock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

[5] *Rondingo, LLC v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011).

[6] Fed. R. Civ. P. 10(c).

[7] Fed. R. Civ. P. 8(a)(2).

conclusions" or "a formulaic recitation of the elements of a cause of action."[8] In order to survive a motion to dismiss, the plaintiff must allege facts, if accepted as true, sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face."[9] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10]

### Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that a court may, on its own or upon the motion of a party, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[11]

Because striking a portion of a pleading is a drastic remedy, motions under Rule 12(f) are generally disfavored and generally will not be granted unless "the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action."[12]

Any doubt about whether the challenged material is redundant, immaterial, impertinent, or scandalous should be resolved in favor of the non-moving party.[13]

---

[8] *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). *See also Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (quoting *Twombly,* 550 U.S. at 555).

[9] *Twombly*, 550 U.S. at 570.

[10] *Iqbal*, 556 U.S. at 678.

[11] Fed. R. Civ. P. 12(f).

[12] 5C Wright & Miller, *Federal Practice and Procedure Civil 3d* § 1382.

[13] *Id.*

## ANALYSIS

Shelby County brings both a Motion to Dismiss and a Motion to Strike. The Court will address each in turn.

### Motion to Dismiss

Shelby County argues that Plaintiff has failed to state a claim because his claims are time barred, because he has not sufficiently alleged municipal liability, and because he has failed to allege facts sufficient to state a claim under either the First or Fourteenth Amendments. For the reasons discussed below, the Court rejects these arguments and **DENIES** Shelby County's Motion to Dismiss.

#### Statute of Limitations

Shelby County argues that Plaintiff's claims are time-barred and should therefore be dismissed. "Actions brought pursuant to 42 U.S.C. § 1983 apply the statute of limitations from a state's general personal injury statute."[14] Tennessee Code Annotated section 28-3-104(a)(3) states that "[c]ivil actions for compensatory or punitive damages, or both, brought under the federal civil rights statutes" must be "commenced within one (1) year after the cause of action accrued."[15]

Plaintiff filed his Complaint on January 25, 2013. The majority of Plaintiff's allegations occurred before January 25, 2012. However, Plaintiff argues that these acts constitute a continuing violation and that because he alleged at least one act that occurred within the statute of limitations period, his claims are not time-barred. Shelby County asserts that Plaintiff's claims constitute discrete acts, which Plaintiff was aware of at the time they occurred.

---

[14] *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003).

[15] T.C.A. § 28-3-104(a)(3); *see also Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003) (applying T.C.A. § 28-3-104(a)(3) to a § 1983 claim).

The continuing violation doctrine allows plaintiffs to recover for injuries that occurred outside the limitations period in two narrow categories of cases.[16] The first "arises when the plaintiff alleges a prior discriminatory activity that continues into the present," such as a claim of a hostile work environment.[17] The second occurs when the plaintiff shows a longstanding policy of discrimination.[18] However, "when an employee seeks redress for discrete acts of discrimination or retaliation, the continuing violation doctrine may not be invoked to allow recovery for acts that occurred outside the filing period."[19] Discrete acts include "termination, failure to promote, denial of transfer, [and] refusal to hire"[20] and they "are not actionable if time barred, even when they are related to acts alleged in timely filed charges."[21] In contrast, a "charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the period."[22]

Plaintiff alleges in his Amended Complaint that he was subject to a hostile work environment. Specifically, he alleges not only that he was transferred and relieved of duty, but also that he was assaulted, had a door slammed on him, was given multiple supervisors and bad performance evaluations, and that he was asked to contribute money to Oldham's fundraiser in order

---

[16] *Baar v. Jefferson Cnty Bd. of Educ.*, 311 Fed. Appx. 817, 823-24 (6th Cir. 2009).

[17] *Id.* (internal quotations omitted).

[18] *Id.*

[19] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002); *see also Sharpe*, 310 F.3d at 267 (applying *Morgan* to a § 1983 claim).

[20] *Morgan*, 536 U.S. at 122.

[21] *Id.*

[22] *Id.*

9

to keep his job. Further, Plaintiff alleges at least one action, the commencement of the BPSI investigation, which occurred within the statute of limitations.[23] It appears to the Court, after reviewing these factual allegations, while some acts may have been discrete, others could constitute a continuing violation. At this stage in the proceedings, in the light most favorable to the plaintiff, Shelby County has not shown that Plaintiff has failed to plead facts sufficient to allow the Court to draw an inference that there was no continuing violation. Therefore, the Court **DENIES** the Motion to Dismiss Plaintiff's claims as time-barred.

Municipal Liability

Next, Shelby County challenges Plaintiff's Amended Complaint on the basis that Plaintiff has failed to allege facts sufficient to hold Shelby County, a municipality, liable. To establish municipal liability under section 1983, the plaintiff must show "(1) the plaintiff's harm was caused by a constitutional violation; and (2) the city was responsible for that violation."[24] A municipality will be liable for constitutional violations "*only* when the injury resulted from an 'implementation of [the municipality's] official policies or established customs.'"[25] To prove that a municipality had an illegal policy or custom, the plaintiff may look to "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a

---

[23] Plaintiff alleges that the BPSI investigation was launched in January 2012 and that on January 27, 2012, Plaintiff was ordered to the BPSI office where he was questioned and given a Garrity Notice. Since Plaintiff's Complaint was filed on January 25, 2013, these actions fall within the one year statute of limitations period.

[24] *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009).

[25] *Id.* (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 708 (1978) (Powell, J., concurring)).

policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations."[26]

Shelby County argues that Plaintiff has failed to state a claim under any of these theories. Plaintiff addresses his allegations only with regard to the second avenue – actions taken by officials with the final decision making authority. Plaintiff does not make any allegations in his Amended Complaint that support a claim under any of the other three theories.

With respect to the second theory, Shelby County argues that Plaintiff has not alleged that any final decision-makers, other than Oldham, purposefully retaliated against him.[27] However, Plaintiff alleges that Oldham, the Sheriff, caused Plaintiff to be suspended, that Defendant was notified Plaintiff had filed an OSC Complaint, and that only Oldham or a few others could have ordered a BPSI Investigation be commenced against Plaintiff. Plaintiff further alleges that these actions were taken in retaliation for his support of Oldham's opponent and his filing of the OSC Complaint.[28] Thus, Plaintiff has alleged that final decision makers, namely Oldham, purposely retaliated against him. Therefore, Plaintiff has sufficiently alleged facts to establish municipal liability.

First Amendment Retaliation Claim

To survive a motion to dismiss a section 1983 claim, "the plaintiff must allege two elements: 1) the defendant acted under color of state law; and 2) the defendant's conduct deprived the plaintiff

---

[26] *Id.* (internal quotations omitted).

[27] Def.'s Mot. to Dismiss 5

[28] The Court will discuss these allegations further when it addresses Plaintiff's First Amendment Claim below.

11

of rights secured under federal law."[29] Here, Plaintiff alleges in his Amended Complaint that Defendants acted under color of state law while taking retaliatory action against him. He therefore sufficiently pleaded state action.

To adequately plead the second element, deprivation of federal rights, the "plaintiff must plead factual allegations sufficient to establish that '(1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct.'"[30]

*Constitutionally Protected Conduct*

Plaintiff alleges two actions that constitute protected conduct – first, that he supported Oldham's opponent in the sheriff's election and second, his filing of the OSC Complaint alleging that Oldham violated the Hatch Act.

For a public employee's speech to be constitutionally protected, the employee "must speak as a citizen and address matters of public concern."[31] Speech involves a matter of public concern when it concerns "issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government."[32] When an employee

---

[29] *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

[30] *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012) (quoting *Fritz*, 592 F.3d at 723).

[31] *Fox v. Traverse City Area Pub. Sc. Bd. of Educ.*, 605 F.3d 345, 348 (6th Cir. 2010) (internal quotations and alterations omitted); *see also Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006).

[32] *Brandenburg v. Housing Authority of Irvine*, 253 F.3d 891, 898 (6th Cir. 2001) (internal quotations omitted).

makes a statement pursuant to his official duties, his speech is not made as a citizen for First Amendment purposes.[33] Since Oldham was running for public office, Plaintiff's allegations are sufficient to show that he was speaking on a matter of public concern. Further, these were not internal complaints or acts taken pursuant to Plaintiff's official duties, but acts Plaintiff took as a private citizen. Therefore, Plaintiff has sufficiently alleged he engaged in protected activity.

Shelby County also argues that Plaintiff's internal complaints of retaliation were made as an employee and thus were not protected. Plaintiff states in his Response that he did not allege internal complaints were protected speech. Therefore, the Court need not address whether these internal complaints were protected conduct sufficient to support a claim for retaliation.

*Adverse Action*

Shelby County does not address the second two elements of a retaliation claim in its Motion to Dismiss. Rather, it merely states that Plaintiff's actions were not protected and thus do not give rise to a claim. Nevertheless, the Court will address both the second and third elements of the claim.

Adverse action is traditionally action "such as discharge, demotions, refusal to hire, nonrenewal of contracts, and failure to promote."[34] Losing a job and accompanying benefits is action that would deter an ordinary person from continuing to engage in the protected conduct[35]

Plaintiff alleges facts indicating that Defendants transferred him to a different unit, relieved him of from duty, required him to submit to a mandatory FFD examination, initiated a BPSI

---

[33] *Garcetti*, 547 U.S. at 421.

[34] *Handy-Clay*, 695 F.3d at 545.

[35] *Id.*

13

investigation against him, and warned him of the potential for criminal charges. Additionally, Plaintiff alleges that while relieved of duty and undergoing the FFD examination, he was not allowed to earn overtime or use a take-home car and was not paid the holiday pay or the annual state supplement for law enforcement officers. Therefore, Plaintiff has pleaded factual allegations sufficient to establish that an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct.

*Motivated By Plaintiff's Protected Conduct*

Finally, Plaintiff must demonstrate that his protected conduct was a substantial or motivating factor in the decision to take the adverse employment action against him. A motivating factor is "one without which the action being challenged simply would not have been taken."[36] A "defendant's motivation for taking action against the plaintiff is usually a matter best suited for the jury," but the chronology of events as well as the employer's knowledge of the protected conduct can support an inference of causation.[37]

Plaintiff's conclusory allegations that Defendants were motivated to harass him because he filed the OSC Complaint are insufficient. The Court will not accept legal conclusions or unwarranted factual inferences as true.[38] "To avoid Dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim."[39] However, Plaintiff also alleges that until the time he opposed Oldham and filed the OSC Complaint, he received

---

[36] *Handy-Clay*, 695 F.3d at 545.

[37] *Id.* (stating that one week or one day between the conduct and the action is sufficient to give rise to an inference of motive).

[38] *Church's Fried Chicken*, 829 F.2d at 12.

[39] *Wittsock*, 330 F.3d at 902.

14

good evaluations at work. After his opposition and his filing of the OSC Complaint, he was transferred, given low performance evaluations, transferred again to a less prestigious job, relieved of duty, denied holiday pay, and required to undergo an FFD evaluation. He also had a BPSI investigation commenced against him. Further, Plaintiff alleges that Oldham was notified that Plaintiff had filed the OSC Complaint. This knowledge, coupled with the chronology of events showing that Plaintiff started facing trouble at work after his support of Oldham's opponent and his filing of the OSC Complaint became known, is sufficient to demonstrate that Plaintiff's conduct was a motivating factor in the decision to transfer him, relieve him of duty, require him to undergo an FFD evaluation, and to undertake the BPSI investigation against him.

Since Plaintiff has sufficiently pleaded facts alleging the elements of a First Amendment retaliation claim, the Court **DENIES** the Motion to Dismiss as to the First Amendment Claim.

Fourteenth Amendment Claim

Defendant argues that Plaintiff has failed to state a claim for a violation of the Fourteenth Amendment. However, Plaintiff indicates in his Response that he included a reference to the Fourteenth Amendment solely for purposes of establishing that his First Amendment claims apply to Shelby County Government, a state entity, via the Fourteenth Amendment. Since there is no Fourteenth Amendment claim separate from the First Amendment claim that the Court has already addressed, the Court **DENIES** the motion to dismiss as to this claim.

**Motion to Strike**

Shelby County argues that Paragraphs 56 and 57 of Plaintiff's Amended Complaint should be stricken because they improperly reference compromise offers and negotiations. Paragraphs 56 and 57 read:

15

> 56. Plaintiff and Defendants attempted to Settle Plaintiff's claims against them during the summer and fall of 2012, but were unsuccessful.
>
> 57. On December 28, 2012, Defendants' employee, agent, and attorney stated that if Plaintiff did not accept Defendants' settlement terms, then the BPSI investigation would likely be "revived" and the risk was quite great that Plaintiff's employment would be terminated.

Federal Rule of Evidence 408 provides that evidence of "furnishing, promising, or offering . . . a valuable consideration in compromising or attempting to compromise the claim" and evidence of "conduct or a statement made during compromise negotiations about the claim" is prohibited "either to prove or disprove the validity or amount of a disputed claim."[40] The Court may admit the evidence for other purposes.[41]

First, Rule 408 is a rule of evidence governing admissibility, not a rule of pleading. Additionally, because Rule 408 allows evidence of settlement negotiations for purposes other than proving the validity or amount of a claim, Shelby County cannot establish at this stage of the proceedings that the paragraphs in the Amended Complaint have no possible relation to the controversy. Finally, Shelby County has failed to show that inclusion of this statement in the Amended Complaint will cause some form of significant prejudice. Therefore, the Court **DENIES** Shelby County's Motion to Strike.

## **CONCLUSION**

For the reasons set forth above, the Court **DENIES** Shelby County's Motion to Dismiss and **DENIES** its Motion to Strike.

---

[40] Fed. R. Evid. 408(a)

[41] Fed. R. Evid. 408(b).

**IT IS SO ORDERED.**

                                            **s/ S. Thomas Anderson**
                                            S. THOMAS ANDERSON
                                            UNITED STATES DISTRICT JUDGE

                                            Date: September 20, 2013.